**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| **WESTFIELD INSURANCE COMPANY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.** |
| | ) |
| **LEGACY CONSTRUCTION SERVICES, LP F/K/A LEGACY CONSTRUCTION SERVICES, JOHN B. HERIN, JR., TINA HERIN, FRANK T. BARTOZZI, and JUDY F. BARTOZZI** | ) ) ) ) ) ) |
| | ) |
| **Defendants.** | |

---

## COMPLAINT

---

Plaintiff Westfield Insurance Company ("Westfield" or the "Surety"), by and through counsel, states the following for its Complaint against Defendant Legacy Construction Services, LP f/k/a Legacy Construction Services ("Legacy Construction" or the "Contractor"), John B. Herin, Jr., Tina Herin, Frank T. Bartozzi, and Judy F. Bartozzi (each Defendant individually an "Indemnitor" and collectively the "Indemnitors"):

## I.     PARTIES

1.     Westfield is an Ohio corporation with its principal place of business in Ohio, and Westfield is registered and/or authorized to transact business in Tennessee including, but not limited to, the issuance of surety bonds. Westfield's principal place of business is located at Westfield's corporate headquarters in Westfield Center, Ohio, which is the location from which Westfield's high level officers direct, control, and coordinate Westfield's activities. Thus, Westfield is a citizen of Ohio for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

2.      Upon information and belief, Legacy Construction Services, LP f/k/a Legacy Construction Services (which has been defined herein as "Legacy Construction") is a Tennessee limited partnership whose partners have been and remain citizens of Tennessee. Thus, Legacy Construction is a citizen of the state of Tennessee for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

3.      Upon information and belief, John B. Herin, Jr. is a citizen of Tennessee.

4.      Upon information and belief, Tina Herin is a citizen of Tennessee.

5.      Upon information and belief, Frank T. Bartozzi is a citizen of Tennessee.

6.      Upon information and belief, Judy F. Bartozzi is a citizen of Tennessee.

## II.      JURISDICTION

7.      This Honorable Court possesses original jurisdiction over the claims asserted in Westfield's Complaint pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and the matter in controversy is between citizens of different states (Ohio Plaintiff and Tennessee Defendants).

8.      This Honorable Court possesses the power to declare the respective rights and other legal relations of Westfield and the Defendants as requested herein pursuant to 28 U.S.C. § 2201(a).

9.      This Honorable Court possesses the authority to award the injunctive relief requested herein pursuant to Rule 65 of the Federal Rules of Civil Procedure.

10.      Venue is proper in the United States District Court for the Western District of Tennessee, Western Division, pursuant to 28 U.S.C. § 123(c)(2) and 28 U.S.C. § 1391(b) because (a) each of the Indemnitors reside in and/or is located the Western District of Tennessee, Western Division (Shelby County) and (b) the Indemnitors expressly agreed in the Agreement of Indemnity

at issue in this action not to assert any defense to Westfield's claims relating to venue, any claim of forum non conveniens, or any claim that the court in which the action or proceeding is brought lacks personal (thereby waiving any potential objection to venue).

## III.    FACTUAL ALLEGATIONS

### The Indemnity Agreement

11.    At all relevant times, Legacy Construction was engaged in the construction business and was sometimes required to furnish surety bonds in connection with its construction contracts.

12.    As a condition of Westfield's issuance of surety bonds on behalf of Legacy Construction, the Indemnitors executed the Agreement of Indemnity attached hereto as **Exhibit 1** (the "Indemnity Agreement") in favor of Westfield on or about September 13, 2016.

13.    With respect to the Indemnitors' duty to exonerate and indemnify Westfield from and against any and all liability for losses and against any and all losses and/or expenses that Westfield actually sustains, Paragraph 2(a) of the Indemnity Agreement provides:

> Generally. **The Indemnitors shall exonerate and indemnify the Surety from and against any and all liability for losses and/or expenses of whatsoever kind (including, but not limited to, interest, court costs, and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain**:
>
> i.    By reason of having executed or procured the execution of the Bonds; or
>
> ii.   By reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of this Agreement; or
>
> iii.  In enforcing by suit or otherwise any of the covenants and conditions of this Agreement. The Surety shall at all times have the right to be represented by the attorney of its own choosing.

(Emphasis added).

14.     With respect to the Indemnitors' duty to deposit cash or other collateral in kind and amount satisfactory to Westfield in its sole discretion if it deems such collateral deposit necessary to secure the Indemnitors' obligations and protect Westfield from loss, Paragraph 2(b) of the Indemnity Agreement states, in relevant part:

> Right to Collateral Deposit. **Whenever liability exists or is asserted against the Surety**, whether or not the Surety shall have made any payment therefor, **or if deemed necessary by the Surety in the Surety's sole discretion, the Surety may demand, and the Indemnitors shall deposit with the Surety, cash or other collateral to secure the obligations of this Agreement, in kind and amount satisfactory to the Surety in its sole discretion**.

(Emphasis added).

15.     The Indemnitors further acknowledged in Paragraph 2(b) of the Indemnity Agreement that their failure to collateralize Westfield upon demand would cause irreparable harm to Westfield for which it would possess no adequate remedy at law as follows, "The Indemnitors acknowledge that the failure of the Indemnitors to deposit with the Surety, immediately upon demand, the sum demanded by the Surety as collateral **shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law**." (Emphasis added).

16.     Pursuant to Paragraph 2(c) of the Indemnity Agreement, the Indemnitors further agreed that Westfield shall be entitled to injunctive relief for specific performance of their obligations under the Indemnity Agreement — including their duty to collateralize Westfield — and waived any defenses they might otherwise possess to such a claim for specific performance as follows:

> Right to Injunctive Relief. **The Indemnitors agree that the Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of the Indemnitors under this Agreement <u>including the obligation to pay to the Surety the sum demanded and hereby waive any claims or defenses to the contrary</u>.**

(Emphasis added).

17.     Though the Indemnitors are obligated to collateralize Westfield upon demand and thereby prevent Westfield from sustaining any loss in the first place, the Indemnitors agreed under Paragraph 2(d) of the Indemnity Agreement that (a) Westfield is entitled to indemnification for any disbursements made under the belief that Westfield is/was liable for the sums and amounts so disbursed or that it was necessary or expedient to make such disbursements and (b) evidence of Westfield's payments shall be prima facie evidence of the fact and amount of the Indemnitors' liability to Westfield as follows:

> Prima Facie Evidence. In the event of any payment by the Surety, the Indemnitors further agree that, in any accounting between the Surety and the Indemnitors, **the Surety shall be entitled to charge for any disbursements made by it regarding the matters herein contemplated under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements,** <u>**whether or not such liability, necessity or expediency existed**</u>**; and that** <u>**the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability of the Indemnitors to the Surety**</u>**.**

(Emphasis added).

18.     With respect to the Indemnitors' duty to furnish Westfield with reasonable access to the Indemnitors' books, records, and accounts, Paragraph 11 of the Indemnity Agreement, entitled "Books and Records," provides:

> BOOKS AND RECORDS. **At any time, and until such time as the liability of the Surety under any and all of the Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitors**; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts and payments of accounts. If requested by the Surety, the Contractor shall promptly confirm the Surety's rights to any entity or other person referenced above.

(Emphasis added).

19.     With respect to Westfield's right, at its option and in its sole discretion, to take possession of any work encompassed by a contract covered by Westfield's bonds and to complete or arrange for the completion of such work at the Indemnitors' expense, Paragraph 6 of the Indemnity Agreement states:

> COMPLETION/CURE. The Indemnitors hereunder warrant, covenant and agree with the Surety that the applicable Contractor under any Bond shall fully and timely observe and perform all of the terms and conditions of the underlying contract, and all other related documents and instruments pertaining to such Bond, that are required to be observed or performed by the Contractor thereunder, such that the applicable Contractor shall not cause or allow a default or breach by such Contractor to occur or remain uncured under such contract or other related documents and instruments pertaining to such Bond. **In the event of any breach or default asserted by the obligee in any Bond,** or in the event the Contractor has abandoned the work on or forfeited any contract or contracts covered by any Bond, or has failed to pay obligations incurred in connection with any such contracts, or in the event of the death, disappearance, criminal conviction imprisonment, incompetency, insolvency, or bankruptcy of the Contractor, or the appointment of a receiver or trustee for the Contractor, or the property of the Contractor, or in the event of an assignment for the benefit of creditors of the Contractor, or if any action is taken by or against the Contractor under or by virtue of the Bankruptcy Code, or should reorganization or arrangement proceedings be filed by or against the Contractor under such Code, or if any action is taken by or against the Contractor under the insolvency laws of any state, possession, or territory of the United States, then, without limiting any other rights of remedies of the Surety under this Agreement, **the Surety shall have the additional right, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession (either temporarily or permanently) of any part or all of the work under any contract or contracts covered by any of the Bonds, and at the expense of the Indemnitors to complete or arrange for the completion of the same, and the Indemnitors shall, promptly upon demand, pay to the Surety all losses and expenses so incurred.** In addition to the Surety's rights described above, in the event the Contractor is not fully performing the underlying contract as required above, the Surety shall have the right to correct any such failure without taking possession of the work and the Indemnitors shall, promptly upon demand, pay to the Surety all losses and expenses so incurred.

(Emphasis added).

20.     With respect to Westfield's right to adjust, settle, or compromise any claim asserted

against its bonds and the binding effect of Westfield's decision to adjust, settle, or compromise

such a claim on the Indemnitors, Paragraph 15 of the Indemnity Agreement states:

> SETTLEMENTS. **The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment related in any way to the Bond or contracts referenced in the Bond**; whether arising on behalf of itself or in the name of any Contractor or other Indemnitor hereunder, **and any such adjustment, settlement or compromise entered into by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety from the Indemnitors hereunder by reason of such adjustment, settlement or compromise**.

(Emphasis added).

21.     With respect to the trust fund nature of the proceeds of any construction contracts

covered by Westfield's bonds, which trust inures in favor of Westfield and Legacy Construction's

subcontractors/suppliers, Paragraph 4 the Indemnity Agreement states:

> TRUST FUND. **It is expressly agreed that all monies due and to become due under any contract or contracts covered by the Bonds are deemed to be trust funds, whether in the possession of the Indemnitors or otherwise, <u>for the benefit of and for payment of all obligations incurred in the performance of the contract and for labor, materials, and services furnished in connection with any such contract or contracts for which the Surety would be liable under any Bond</u>, which trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any Bond, and this Agreement and declaration shall also constitute notice of such trust.**

(Emphasis added).

22.     With respect to the Indemnitors' waiver of various defenses they may otherwise

possess in relation to the Indemnity Agreement, such as the right to a jury trial, Paragraph 19 the

Indemnity Agreement states, in relevant part:

> SUITS. Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising. The Surety shall be entitled to enforce the obligations hereof directly against any Indemnitor, without the necessity of first

proceeding against any other particular Indemnitor or Indemnitors. In any proceeding or action relating to any Bond or the enforcement of this Agreement, the Indemnitors, unless requested by Surety to assert said rights, **expressly waive, abandon and agree not to assert as a claim, defense or otherwise**:

a.    **Any right to a trial by jury**; or

b.    **Any objection to venue, claim of forum non conveniens or any claim that the court in which the action or proceeding is brought lacks personal or subject matter jurisdiction**; or

c.    Any claim that the law applicable to any action or proceeding as determined by the Surety is improper or incorrect; or

d.    Exhaustion of remedies.

(Emphasis added).

23.    Paragraph 27 of the Indemnity Agreement confirms that neither the Indemnity agreement nor Westfield's rights thereunder can be waived or modified without a writing that has been duly signed on behalf of Westfield as follows:

NO WAIVER. No waiver of any rights hereunder, and no modification or amendment of this Agreement, **shall be deemed to be made by the Surety unless the same shall be in writing, duly signed on behalf of the Surety**, and each such waiver (if any) shall apply only with respect to the specific instance involved and shall in no way impair the rights of the Surety or the obligations of the Indemnitors to the Surety in any other respect at any other time.

(Emphasis added).

24.    With respect to the sole method of terminating the Indemnitors' obligations thereunder, Paragraph 23 of the Indemnity agreement states:

TERMINATION. **This Agreement may be terminated by the Indemnitors to be effective twenty days after receipt of written notice by certified mail by the Surety at its home office at One Park Circle, Westfield Center, Ohio 44251-5001, Attn: Surety Department, but any such notice of termination shall not operate to modify, bar, or discharge the Indemnitors as to the Bonds that may have been executed prior to such effective date, such that all promises, obligations, liens, security interests against Collateral, the Collateral, and the liabilities of the Indemnitors hereunder that arose, accrued, attached and/or perfected prior to such effective date of termination shall survive indefinitely,**

**notwithstanding the giving of such notice of termination by such party.** Notice of termination shall operate only with respect to those undersigned upon whose behalf such notice of termination is given. No oral notice to or constructive notice to any agent or employee of the Surety, or any other person, shall constitute notice of termination under this Agreement.

(Emphasis added).

## The Bonds, the Contract, and the Project

25.     In reliance upon the Indemnitors' execution of the Indemnity Agreement and in reliance upon Westfield's rights under the Indemnity Agreement, Westfield issued Performance Bond 124330V (the "Performance Bond") and Payment Bond 124330V (the "Payment Bond"), copies of which are collectively attached hereto as **Exhibit 2** (collectively, the "Bonds"), on behalf of Legacy Construction at the request of one or more of the Indemnitors.

26.     The Bonds relate to a construction contract dated March 10, 2021 in the initial amount of $3,871,938 (the "Contract") between Legacy Construction and the City of Southaven, Mississippi (the "Owner").

27.     Pursuant to the Contract, as more fully set forth therein, Legacy Construction undertook to perform certain work in the capacity as the general contractor on a construction project referred to in the Contract as Southaven Fire Station #5 (the "Project").

28.     Pursuant to the Contract, as more fully set forth therein, the architect for the Project is A2H, PLLC (the "Architect"), who also serves as the Owner's representative on the Project for the purposes detailed in the Contract.

## The Owner's Termination of the Contract and Performance Bond Claim

29.     Throughout the life of the Contract, various disputes arose among Legacy Construction, the Owner, and/or the Architect relating to the quality, quantity, and pace of Legacy Construction's work under the Contract.

30.     As result of the various disputes relating to the quality, quantity, and pace of Legacy Construction's work under the Contract, the Owner ultimately declared a "Contractor Default" as contemplated by Paragraph 3.2 of the Performance Bond and terminated Legacy Construction's right to complete the Contract pursuant to Article 14.2.2 of the Contract by letter dated December 9, 2022 (a copy of which is included in Exhibit 5 referenced below).

31.     The Owner subsequently agreed to pay the "Balance of the Contract Price" to Westfield as contemplated by Paragraph 3.3 of the Performance Bond and demanded that Westfield make a performance election under Paragraph 4 of the Performance Bond via a separate letter dated December 9, 2022 (a copy of which is included in Exhibit 5 referenced below).

### The Completion Agreement and the Takeover Agreement

32.     One or more of the Indemnitors subsequently requested that Westfield exercise the performance options set forth in Paragraph 4.2 of the Performance Bond by undertaking the obligation to perform and complete the Contract and utilizing Legacy Construction to do so.

33.     Following the request that Westfield exercise the performance options set forth in Paragraph 4.2 of the Performance Bond, Westfield and the Indemnitors negotiated and executed the Completion Agreement attached hereto as **Exhibit 3** (the "Completion Agreement").

34.     Paragraph 1 of the Completion Agreement requires Legacy Construction to perform and complete the Contract at the supervision and/or direction of Westfield's consultant Nicholson Management, Inc ("Nicholson Management" or the "Surety's Consultant") as follows:

> Subject to the terms and conditions of this Agreement, **the Contractor shall undertake to perform and complete the Construction Contract on behalf of the Surety as contemplated by Paragraph 4.2 of the Performance Bond**. The Surety shall also be represented in the performance and completion of the Construction Contract by Nicholson Management, Inc (the "Surety's Consultant") who will, to the extent necessary and upon such other terms and conditions as mutually agreed upon by Surety and Contractor as the Construction Contract is performed and completed, **supervise, participate in, and/or direct the**

**scheduling, coordination, and management of the Contractor's performance and completion of the Construction Contract**.

(Emphasis added).

35. Paragraph 1 of the Completion Agreement further imposes the following obligations on Legacy Construction relative to the performance and completion of the work and other obligations encompassed by the Contract:

> Subject to the supervision, participation, and/or direction of the Surety and/or the Surety's Consultant, the Contractor agrees to perform and complete all remaining Work and fulfill all other obligations encompassed by the Construction Contract and further agrees to abide by all the terms, conditions, and provisions of the Indemnity Agreement, the Construction Contract, and the separate Agreement Regarding Completion of Construction Contract among the Owner, the Contractor, and the Surety (the "Agreement Regarding Completion"). **In addition to its obligations under the Construction Contract, the Contractor shall at all times ensure that**:
>
> a.   **The Contractor has adequate equipment and adequate, qualified personnel on site to complete the Work pursuant to the Schedule set forth in the Agreement Regarding Completion**;
>
> b.   **The Contractor has executed subcontracts and/or purchase orders with subcontractors/suppliers in place for all Work the Contractor does not intend to self-perform or furnish within 10 business days of the execution of this Agreement**;
>
> c.   The Contractor maintains all insurance coverages and limits required under the Construction Contract and the Contractor adds the Surety and the Surety's Consultant as additional insured under all policies of insurance required;
>
> d.   The Contractor, its employees, agents, representatives, and subcontractors/suppliers comply with all federal, state, and local laws, codes, ordinances, and regulations applicable to the Construction Contract;
>
> e.   The Contractor representatives are onsite for a meeting with the Owner within five (5) business days of a missed scheduled milestone under the Schedule to discuss how to make up time lost;
>
> f.   **The Contractor completes the Work pursuant to the Construction Contract, this Agreement, the Agreement Regarding Completion, and pursuant to the direction and instruction of the Surety's Consultant as applicable**;

g.      The Contractor's representative or any other representative are on the Project site(s) daily to prosecute the Work;

h.      Upon the Surety's or the Surety's Consultant's request, the Contractor's Representative meet with the Surety and/or the Surety's Consultant on site to inspect and evaluate the status and quality of the Work. The Contractor's representative shall attend all Project meetings with the Owner;

i.      The Contractor is available for a conference call and/or site meeting if the Owner notifies the Surety that the Contractor's work does not comply with the Construction Contract or that Owner reasonably believes that the Contractor may not complete the work in accordance with any applicable Schedule(s).

(Emphasis added).

36.      Paragraph 2 of the Completion Agreement requires Legacy Construction to complete the Contract at no cost to Westfield and/or requires the Indemnitors to find any excess completion costs as follows:

**The Contractor shall complete the Construction Contract at no additional cost to the Surety**. The Indemnitors acknowledge that the Balance of the Contract Price shall be first used to pay for any labor, materials, or equipment furnished to the Contractor for use in the performance of the Construction Contract and then shall be used to reimburse the Contractor's direct costs of completing the Construction Contract. **To the extent the cost to perform and complete the Construction Contract exceeds the Balance of the Contract Price, the Indemnitors shall fund those costs.**

(Emphasis added).

37.      Paragraph 5 of the Completion Agreement reaffirms the Indemnitors' obligations to Westfield under the Indemnity Agreement as follows:

**The Indemnitors hereby acknowledge the Indemnitors' execution of the Indemnity Agreement and reaffirm their continuing joint and several obligations and liabilities to the Surety thereunder. The Indemnitors acknowledge that nothing in this Agreement shall be deemed a waiver, release, or modification of the Surety's rights and remedies under the Indemnity Agreement or the Indemnitors' obligations under or in connection with the Indemnity Agreement, all of which remain in full force and effect** . . . .

(Emphasis added).

38.     Paragraph 5 of the Completion Agreement expressly reserves Westfield's right to arrange for the completion of work under the Construction Contract by others as follows:

> **The Surety's rights under this Agreement are in addition to the Surety's rights under the Indemnity Agreement including, but not limited to, the Surety's right to exercise its rights to take possession of, complete, or arrange for the completion of the Construction Contract or the Surety's right to demand the deposit of additional collateral if deemed necessary in the Surety's sole discretion.**

(Emphasis added).

39.     With respect to the partial satisfaction of the Indemnitors' collateral obligations to Westfield, Paragraph 4 the Completion Agreement states:

> As a condition of the Surety's agreement to utilize the Contractor to perform and complete the Construction Contract pursuant to this Agreement and the Agreement Regarding Completion, Indemnitors John B. Herin, Jr. and Tina B. Herin shall pledge or to cause to be pledged to the Surety a security interest in and a lien on certain real property generally described as 214 Mountain Brook Cove, Eads, Tennessee 38028 (collectively with all improvements, fixtures, leases, rents, income, etc. the "Collateral"). Indemnitors John B. Herin, Jr. and Tina B. Herin shall execute and file or permit to be filed the Deed of Trust, Security Agreement and Assignment of Rents and Leases attached hereto as Exhibit 2 (the "Deed of Trust") in order to perfect the Surety's security interest in and lien on the Collateral The Surety shall release the Deed of Trust only upon full satisfaction of the Indemnitors' obligations under this Agreement and the Indemnity Agreement Notwithstanding the foregoing, Surety agrees that in the event of a sale of the foregoing Collateral while this Agreement is still in effect, Contractor will provide Surety with alternative collateral on terms and conditions acceptable to Surety.

40.     As contemplated by Paragraph 4 of the Completion Agreement, Indemnitor John B. Herin, Jr. and Indemnitor Tina Herin executed a Deed of Trust in favor of Westfield relative to their personal residence described as 214 Mountain Brook Cove, Eads, Tennessee 38028, a recorded copy of which Deed of Trust is attached hereto as **Exhibit 4.**

41.     Following the negotiation and execution of the Completion Agreement by Westfield and the Indemnitors, and under a full reservation of Westfield's rights against the Indemnitors and the Owner, Westfield negotiated and executed the Takeover Agreement

Regarding Completion of Construction Contract with the Owner attached hereto as **Exhibit 5** (the "Takeover Agreement") to, among other things, reaffirm the Indemnitors' obligations to Westfield under the Indemnity Agreement and to set forth the terms and conditions under which Westfield was willing to utilize Legacy Construction to perform and complete the Contract pursuant to Paragraph 4.2 of the Performance Bond.

42.    Pursuant to the Takeover Agreement, and as more fully set forth therein, Westfield elected to undertake to perform and complete the Contract itself, through its agents, or through independent contractors as contemplated by Paragraph 14.2 of the Performance Bond (subject to the Owner's duty to pay the Balance of the Contract Price to the Surety as required by Paragraph 3.2 and Paragraph 6 of the Performance Bond).

43.    Pursuant to the Takeover Agreement, and as more fully set forth therein, Westfield reserved its rights, claims, and defenses arising out of or relating to the Contract and/or the Bonds including, but not limited to, any defenses Legacy Construction or Westfield may possess in relation to the Owner's claim against the Performance Bond and/or any claims Westfield may possess against the Indemnitors.

### The Indemnitors' Failure to Collateralize Westfield's Increasing Exposure

44.    The Owner's and/or the Architect's complaints regarding the quality, quantity, and pace of Legacy Construction's work on the Project have continued since the execution of the Completion Agreement and the Takeover Agreement.

45.    In fact, the Owner has alleged that, by virtue of Legacy Construction's performance on the Project (or the lack thereof), Westfield has breached the Takeover Agreement and/or has breached the duty of good faith and fair dealing under the Takeover Agreement (which allegation Westfield expressly denies).

46.     The Owner also contends that it has incurred attorneys' fees exceeding $152,436.40, consultant's fees exceeding $43,735.00, and additional fees to the Architect in excess of $118,000.00 the Owner contends it can set off against the "Balance of the Contract Price" and/or recover from Westfield under the Performance Bond (in relation to which contention Westfield expressly reserves rights, remedies, and defenses).

47.     The Owner also contends that it has incurred significant liquidated and other delay damages in an amount yet to be calculated the Owner contends it can set off against the "Balance of the Contract Price" and/or recover from Westfield under the Performance Bond (in relation to which contention Westfield expressly reserves rights, remedies, and defenses).

48.     Legacy Construction has failed to have adequate equipment and adequate, qualified personnel on site to perform and complete the Contract as required by Paragraph 1 of the Completion Agreement.

49.     Legacy Construction has failed to execute subcontracts and/or purchase orders with subcontractors/suppliers for the work Legacy Construction does not intend to self-perform or furnish as required by Paragraph 1 of the Completion Agreement.

50.     To date, Legacy Construction has failed to complete the Contract at no additional cost to Westfield as required by Paragraph 2 of the Completion Agreement.

51.     To date, the Indemnitors have also failed to fund the cost to perform and complete the Contract to the extent those costs exceed the "Balance of the Contract Price" as required by the Performance Bond.

52.     Moreover, Indemnitor John B. Herin, Jr. recently notified Westfield that (a) Legacy Construction's debts to its subcontractors/suppliers on the Project exceed the amounts for which

Legacy Construction has billed or could bill under the Contract for the work performed and (b) Legacy Construction lacks the financial wherewithal to fund the resulting shortfall.

53.     Indemnitor John B. Herin, Jr. also recently notified Westfield that Legacy Construction lacks the financial wherewithal to pay its own employees to perform and complete work under the Contract and/or to pay for necessary labor, materials, equipment, etc. needed to perform and complete the Contract.

54.     Westfield has also determined (under a full reservation of its rights, remedies, and defenses) that the projected cost to complete the remaining work under the Contract significantly exceeds the remaining "Balance of the Contract," which in turn exposes Westfield to significant loss under the Performance Bond relative to those excess completion costs.

55.     As a result of Legacy Construction's struggles and financial instability, Westfield has been forced to use its own funds to pay Legacy Construction's subcontractors/suppliers for certain labor, materials, equipment, etc. they had furnished and/or may furnish in relation to the Contract.

56.     Based upon the foregoing, and by letter dated May 24, 2024 and attached hereto as **Exhibit 6**, Westfield, among other things, demanded that the Indemnitors (a) deposit of cash or an irrevocable letter of credit in the amount of $2,000,000 within 10 days of that letter as collateral security for their obligations to Westfield and (b) grant Westfield free access to their books, records, accounts, etc.

57.     Despite Westfield's demand, however, the Indemnitors have not deposited any additional collateral with Westfield as required by Paragraph 2(b) of the Indemnity Agreement.

58.     Moreover, despite Westfield's demand, the Indemnitors have not agreed to grant Westfield free access to their personal books, records, accounts, etc. as required by Paragraph 11 of the Indemnity Agreement

59.     To date, Indemnitor Frank T. Bartozzi and Indemnitor Judy F. Bartozzi have retained counsel but have not substantively responded to or complied with Westfield's demands.

60.     As result of foregoing, Westfield executed the Construction Management Agreement for Project Completion attached hereto as **Exhibit 7** with Nicholson Management (the "Construction Management Agreement"), under which, as more fully set forth herein, Westfield retained Nicholson Management to assist in the selection of completion contractors, coordination and scheduling of the remaining work under the Contract, and provide other services relative to the Project.

61.     As result of foregoing, Westfield initiated this action to enforce the Indemnitors' collateral, indemnity, and other obligations to Westfield under the Indemnity Agreement.

### IV.     CAUSES OF ACTION

### Count I — Specific Performance (*i.e.*, Deposit of Collateral)

62.     Westfield hereby restates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

63.     Pursuant to Paragraph 2(b) of the Indemnity Agreement, as more fully set forth therein, whenever liability exists or is asserted against Westfield, whether or not Westfield shall have made any payment therefor, or if deemed necessary by Westfield in Westfield's sole discretion, Westfield may demand, and the Indemnitors shall deposit with Westfield, cash or other collateral to secure the obligations of this Agreement, in kind and amount satisfactory to Westfield in its sole discretion.

64.     Though Westfield fully reserves any and all of its rights, remedies, defenses, etc. under the Bonds, based upon the liability that has been and/or may be asserted against Westfield under the Bonds, Westfield deemed it necessary to demand and has in fact demanded that the Indemnitors deposit of cash or an irrevocable letter of credit in the amount of $2,000,000 as collateral security for their obligations to Westfield.

65.     Despite Westfield's demand, the Indemnitors have materially breached Paragraph 2(b) of the Indemnity Agreement by failing and/or refusing to any additional collateral Westfield.

66.     As the Indemnitors acknowledged in Paragraph 2(b) of the Indemnity Agreement, Westfield lacks an adequate remedy at law in relation to the Indemnitors' material breach of the Indemnity Agreement by failing to deposit the demanded collateral with Westfield.

67.     As the Indemnitors further acknowledged in Paragraph 2(b) of the Indemnity Agreement, the Indemnitors' material breach of the Indemnity Agreement by failing to deposit the demanded collateral with Westfield has caused irreparable harm to Westfield.

68.     The Indemnitors' failure to deposit the demanded collateral continues to cause irreparable harm to Westfield because, among other things, Westfield is being deprived of its bargained for right to receive, hold, and/or utilize the collateral relative to the liability that has been and/or may be asserted against Westfield by reason of having issued the Bonds.

69.     The balance of the equities weighs heavily in favor of entering an injunction and/or judgment in favor of Westfield for specific performance of the Indemnitors' obligations under Paragraph 2(b) of the Indemnity Agreement because, among other things, Westfield is merely seeking to enforce the terms of the Indemnity Agreement to which the Indemnitors voluntarily agreed and Westfield continues to be deprived of its bargain-for right to receive, hold, and/or utilize acceptable collateral relative to the claims that have been and/or may be asserted against Westfield relative to the Bonds.

70.     As the Indemnitors acknowledged in Paragraph 2(c) of the Indemnity Agreement, the Indemnitors have expressly waived any claims or defenses in opposition to their obligation to collateralize Westfield upon demand.

71.     Specifically enforcing the Indemnitors' collateral obligations will also further a number of public interests including, but not limited to, strengthening the sanctity of unambiguous contracts, fostering confidence in the surety industry, and ensuring the solvency of sureties such as Westfield, without whom public works projects such as the Project could not be performed.

72.     Westfield is therefore entitled to the entry of an injunction/judgment compelling the Indemnitors, jointly and severally, to deposit cash collateral with Westfield in the amount of $2,000,000 as collateral security for the liability that has or may be asserted against Westfield by reason of having issued the Bonds and/or as collateral security for the Indemnitors' obligations to Westfield under the Indemnity Agreement.

**Count II – Specific Performance Against the Indemnitors**
**(Access to Books, Records, and Accounts)**

73.     Westfield hereby restates the allegations contained in the foregoing Paragraphs of this Complaint as if fully set forth herein.

74.     Pursuant to Paragraph 11 of the Indemnity Agreement, at any time, and until such time as the liability of Westfield under the Bonds is terminated, Westfield shall have the right to reasonable access to the books, records, and accounts of the Indemnitors.

75.     Pursuant to Paragraph 2(c) of the Indemnity Agreement, the Indemnitors agreed that Westfield shall be entitled to injunctive relief for specific performance of any or all of the Indemnitors' obligations under the Indemnity Agreement and waived any claims or defenses to the contrary.

76.     To date, however, the Indemnitors have failed and/or refused to grant Westfield access to the books, records, and accounts of the personal Indemnitors and/or of Legacy Construction to the extent they are unrelated to the Project.

77.     The Indemnitors' failure to grant Westfield access to their respective books, records, and accounts constitutes a material breach of Paragraph 11 of the Indemnity Agreement.

78.     Westfield lacks an adequate remedy at law in relation to the Indemnitors' material breach of Paragraph 11 of the Indemnity Agreement.

79.     The Indemnitors' material breach of Paragraph 11 of the Indemnity Agreement has caused and continues to cause irreparable harm to Westfield because, among other things, Westfield is being deprived of its bargained for right to access information that is vital to Westfield's investigation and mitigation of its exposure to loss under the Bonds and/or Westfield's investigation and enforcement of the various obligations the Indemnitors owe to Westfield under the Indemnity Agreement.

80.     The balance of the equities weighs heavily in favor of entering an injunction and/or judgment in favor of Westfield for specific performance of the Indemnitors' duty to furnish Westfield access to their books, records, and accounts as required by Paragraph 11 of the Indemnity Agreement because Westfield is merely seeking to enforce the terms of the Indemnity Agreement to which the Indemnitors voluntarily agreed and Westfield continues to be deprived of its bargained-for right to access information that is vital to Westfield's investigation and mitigation of its exposure to loss under the Bonds and/or Westfield's investigation and enforcement of the various obligations the Indemnitors owe to Westfield under the Indemnity Agreement.

81.     Compelling the Indemnitors to grant Westfield access to their books, records, accounts, etc. as required by Paragraph 11 of the Indemnity Agreement would strengthen the

public interest of enforcing the clear and unambiguous terms of written indemnity agreements, while instilling confidence in the surety industry.

82.     Therefore, Westfield is entitled to the entry of an injunction/judgment compelling the Indemnitors to specifically perform their obligation to grant Westfield access to their books, records, accounts, etc.as required by Paragraph 11 of the Indemnity Agreement.

### Count III — Breach of Contract (*i.e.*, damages)

83.     Westfield hereby restates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

84.     Pursuant to Paragraph 2(a) of the Indemnity Agreement, as more fully set forth therein, the Indemnitors are jointly and severally obligated to exonerate and indemnify Westfield from and against any and all liability for losses and/or expenses of whatsoever kind (including, but not limited to, interest, court costs, and counsel fees) and from and against any and all such losses and/or expenses which Westfield may sustain (a) by reason of having executed the Bonds, (b) by reason of the Indemnitors' to perform or comply with the covenants and conditions of the Indemnity Agreement, and/or (c) in enforcing by suit or otherwise any of the covenants and conditions of the Indemnity Agreement.

85.     To date, Westfield has sustained, and continues to sustain, liability for losses and/or actual losses/expenses (including, but not limited to, interest, court costs, and counsel fees) (a) by reason of having executed the Bonds, (b) by reason of the Indemnitors' failure to perform or comply with the covenants and conditions of the Indemnity Agreement, and/or (c) in enforcing by suit or otherwise any of the covenants and conditions of the Indemnity Agreement, the amount of which loss currently exceeds $497,832 and which amount continues to accrue and will be proven in this action.

86.    To date, the Indemnitors have materially breached the Indemnity Agreement by failing to exonerate and indemnify Westfield from and against any and all liability for losses and/or expenses of whatsoever kind (including, but not limited to, interest, court costs, and counsel fees) and from and against any and all such losses and/or expenses which Westfield may sustain (a) by reason of having executed the Bonds, (b) by reason of the Indemnitors' failure to perform or comply with the covenants and conditions of the Indemnity Agreement, and/or (c) in enforcing by suit or otherwise any of the covenants and conditions of the Indemnity Agreement.

87.    The Indemnitors' material breach of the Indemnity Agreement by failing to exonerate and indemnify Westfield has proximately caused damages to Westfield in an amount that currently exceeds $497,832 and continues to accrue and will be proven in this action.

88.    Therefore, Westfield is entitled to the entry of judgment against the Indemnitors, jointly and severally, in an amount sufficient to fully exonerate and indemnify Westfield from and against any and all liability for losses and/or expenses of whatsoever kind (including, but not limited to, interest, court costs, and counsel fees) and from and against any and all such losses and/or expenses which Westfield may sustain (a) by reason of having executed the Bonds, (b) by reason of the Indemnitors' failure to perform or comply with the covenants and conditions of the Indemnity Agreement, and/or (c) in enforcing by suit or otherwise any of the covenants and conditions of the Indemnity Agreement, which amount will be proven in this action.

WHEREFORE, PREMISES CONSIDERED, Westfield prays for the following relief:

a)    For the issuance of process requiring each of the Indemnitors to answer Westfield's Complaint;

b)    For the entry of a preliminary injunction and/or a judgment compelling the Indemnitors, jointly and severally, to specifically perform their obligation to deposit cash, an irrevocable letter of credit, or other collateral satisfactory to Westfield, in its sole discretion, totaling $2,000,000 as collateral security for the liability that has or may be asserted against Westfield by reason of having issued

the Bonds and/or as collateral security for the Indemnitors' obligations to Westfield under the Indemnity Agreement;

c)   For the entry of an injunction/judgment compelling the Indemnitors to specifically perform their obligation to provide access to examine and copy the books, records, and accounts of the Indemnitors pursuant to Paragraph 11 of the Indemnity Agreement;

d)   For the entry of judgment against the Indemnitors, jointly and severally, in an amount sufficient to fully exonerate and indemnify Westfield from and against any and all liability for losses and/or expenses of whatsoever kind (including, but not limited to, interest, court costs, and counsel fees) and from and against any and all such losses and/or expenses which Westfield may sustain (a) by reason of having executed the Bonds, (b) by reason of the Indemnitors' failure to perform or comply with the covenants and conditions of the Indemnity Agreement, and/or (c) in enforcing by suit or otherwise any of the covenants and conditions of the Indemnity Agreement, which amount currently exceeds $497,832.39 and which amount continues to accrue will be proven in this action;

e)   For such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause including, but not limited to, pre-judgment and post-judgment interest.

Respectfully submitted,

*/s/ Jarrod W. Stone*
Jarrod W. Stone, Tenn. Bar No. 023915
MANIER & HEROD
1201 Demonbreun Street, Ste. 900
Nashville, Tennessee 37203
Phone: (615) 244-0030
Fax: (615) 242-4203
JStone@ManierHerod.com

*Attorney for Westfield Insurance Company*